IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**KEVIN R. KEMPER,**
**4833 Oxley Road**
**Mill Creek, OK 74856**

        **Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF THE**
**INTERIOR,**
**1849 C Street, NW**
**Washington, D.C. 20240**

        **Defendant.**

**Case No. 1:15-cv-771**

## COMPLAINT

Plaintiff Kevin R. Kemper, by and through his undersigned attorneys, alleges:

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§§ 552, *et seq.,* brought by Kevin R. Kemper, Ph.D ("Dr. Kemper" or "Plaintiff").  Dr. Kemper

brings this action for injunctive and other appropriate relief, seeking the release of agency

records from the Bureau of Indian Affairs ("BIA") of the United States Department of the

Interior ("Interior" or "DOI").

2.      Through this action, Dr. Kemper seeks to compel the BIA and Interior to make a

reasonable search for and provide copies of each version of the constitution, articles of

incorporation or other organic legal document of each American Indian and Alaska Native tribal

government within the United States.  Dr. Kemper intends to organize and provide these

documents online so that tribal members, researchers and visitors to tribal lands may know and

understand what the law is.

3.      After Dr. Kemper filed his request to BIA under FOIA in December 2014, the agency performed a perfunctory search of one headquarters office and responded that it could not locate *any* copy of *any* constitution or articles of incorporation of *any* of the hundreds of Indian nations whose relations with the federal government the BIA administers.

4.      Skeptical of the BIA's dubious claim, Dr. Kemper filed an administrative appeal to Interior of the constructive denial of his request based upon a legally inadequate search.  Dr. Kemper's appeal noted that the BIA's assertion was suspect because it should have these documents on hand:  Federal statutes and regulations require tribes to submit copies of their constitutions to the BIA, for example.  Simply put, the BIA's claim not to be able to locate even one copy of one tribe's foundational legal documents shows that it did not conduct a reasonable and diligent search.

5.      To date, Interior has failed to respond to Dr. Kemper's administrative appeal. Because the BIA and Interior have failed to live up to their obligations under FOIA, this Court should compel them to abide by the law, perform a reasonable search, and release copies of all tribal constitutions and articles of incorporation.

**PARTIES**

6.      Plaintiff Kevin R. Kemper is an independent researcher and former assistant professor of journalism.  He holds a Ph.D in journalism, as well as a juris doctorate and LL.M. His address is 4833 Oxley Road, Mill Creek, OK 74856.

7.      Defendant Interior and its Bureau of Indian Affairs are agencies of the federal government which have possession, custody and/or control of the records Dr. Kemper seeks. Interior and BIA are headquartered at 1849 C Street, NW, Washington, DC 20240.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action and personal

jurisdiction over Interior pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

9.     Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

10.     Dr. Kemper is deemed to have exhausted all of his administrative remedies

pursuant to 5 U.S.C. § 552(a)(6)(C) because Interior has failed to respond within the statutorily

mandated time limit of twenty working days after receipt of his administrative appeal.  5 U.S.C.

§ 552(a)(6)(A)(ii).

## FACTS

11.     FOIA "focuses on the citizens' right to be informed about 'what their government

is up to,'" by fostering the release of "[o]fficial information that sheds light on an agency's

performance of its statutory duties." *DOJ v. Reporters Comm. For Freedom of the Press*, 489

U.S. 749, 773 (1989) (citation omitted).  "[D]isclosure, not secrecy, is the dominant objective" of

FOIA. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal

quotation marks and citations omitted).  The fact that requested records originated with or relate

to American Indian or Alaska Native governments is no bar to their release because, as the

Supreme Court observed, there is no "Indian trust" exemption to FOIA.  *Id.* at 15-16.

12.     One of President Obama's first acts after taking office was to state his

administration's policy regarding FOIA, instructing agency managers that "[t]he Freedom of

Information Act should be administered with a clear presumption: In the face of doubt, openness

prevails. . . . Nondisclosure should never be based on an effort to protect the personal interests of

Government officials at the expense of those they are supposed to serve."  Presidential

Memorandum, Freedom of Information Act, 74 Fed. Reg. 4,683 (Jan. 21, 2009).

3

13.     On December 1, 2014, Dr. Kemper submitted a request to the BIA seeking "access to and copies of each and every constitution, articles of incorporation, or similar organizing document ever passed for or by each of the current federally-recognized American Indian or Alaska Native tribes in the United States."  Ex. A at 1.  A true and correct copy of this FOIA request is attached hereto as Exhibit A.

14.     Dr. Kemper explained that he intends to make these documents available "to the general public on a Web site dedicated to serving journalists and journalism, general circulation and professional publications, and academic publications."

15.     The public interest in obtaining access to these records is undeniable.  Tribal members deserve access to their governments' fundamental laws.  So, too, do non-members whose travel, business, or entertainment activities can bring them into contact with those tribal governments. Journalists, both Indian and non-Indian alike, will be better able to inform the public regarding tribal government when these foundational documents are available.  And researchers and academics in fields such as law, political science, public policy and American Indian studies will be able to analyze these basic legal documents to provide greater insight and understanding.

16.     The BIA responded by letter dated December 23, 2014, signed by Hankie P. Ortiz, Deputy Bureau Director of the Office of Indian Services (the "Response").  A true and correct copy of this letter is attached hereto as Exhibit B.

17.     The Response stated that "[a]fter searching our records, the FOIA Coordinator for the Office of Indian Services was not able to locate any files that were responsive to your request in our Washington D.C. office."  Ex. B at 1.

18.     The Response also stated that "the Department [of the Interior] has a decentralized record keeping system" and suggested that "[a] FOIA request can be sent directly to each of our twelve regional offices." *Id.* at 2.  The Response did not explain why, given these assertions, the BIA limited its search to the Washington, D.C. office of the Office of Indian Services.

19.     Federal agencies are required to "make more than perfunctory searches and, indeed, to follow through on obvious leads to discover requested documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325-26 (D.C. Cir. 1999).

20.     Further, a federal agency responding to a FOIA request must show "beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Valencia-Lucena*, 180 F.3d at 325 (internal quotations omitted).

21.     Interior and the BIA cannot make this showing.  Rather, the opposite is true:  It is beyond material doubt that BIA's search was not "reasonably calculated to uncover all relevant documents."

22.     According to the BIA, the search encompassed the records of only the Washington headquarters of only one office.  The BIA provided neither explanation nor justification for its restricting the search in this manner.  Given that BIA has a decentralized record-keeping system where records are dispersed among Washington headquarters and a dozen regional offices, searching one office in Washington cannot possibly constitute an adequate search under the law.

23.     Although an agency responding to a FOIA request "generally need not 'search every record system,'" it "'cannot limit its search to only one record system if there are others that are likely to turn up the information requested.'" *Campbell v. U.S. Dep't of Justice*, 164

F.3d 20, 28 (D.C. Cir. 1998) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir.

1990)).  Unfortunately, that is precisely what the BIA did regarding Dr. Kemper's Request.

24.     Moreover, as discussed further *infra*, the fact that the office in question is required

by law to have responsive records is further proof that the search was inadequate.  In other

words, any conceivably appropriate search would have resulted in the discovery and release of

responsive records.

25.     Dr. Kemper, through counsel, filed a timely administrative appeal (the "Appeal")

to the Interior Solicitor's office on January 29, 2015.  A true and correct copy of the Appeal is

attached hereto as Exhibit C.

26.     The Appeal noted that "BIA is *required*, by statute and regulation, to have records

responsive to Dr. Kemper's request."  Ex. C at 1 (emphasis in original).  For example, the Indian

Reorganization Act since its passage in 1934 has required those tribal governments organized

pursuant to its provisions to submit their proposed constitutions or other organic documents for

approval by the Secretary of the Interior or her designee.  Ex. C at 2-3 (citing 25 U.S.C. § 476;

*Kerr-McGee Corp. v. Navajo Tribe of Indians*, 471 U.S. 195, 198-99 (1985); *Thomas v. United

States*, 189 F.3d 662, 664 (7th Cir. 1999); 25 C.F.R. § 81.24 (requiring, *inter alia*, that text of

proposed tribal constitutions be provided to the "Commissioner of Indian Affairs")).

27.     As the Appeal also stated, the process for Interior Department approval of tribal

governing documents has resulted in extensive litigation involving BIA and Interior.  Ex. C at 3

(citing *California Valley Miwok Tribe v. United States*, 515 F.3d 1262 (D.C. Cir. 2008);

*Shakopee Mdewakanton Sioux (Dakota) Cmty. v. Babbitt*, 107 F.3d 667 (8th Cir. 1997); *King v.

Norton*, 160 F. Supp. 2d 755 (E.D. Mich. 2001)).

28.    Information posted on the BIA's own website is further proof that the BIA has records responsive to the Request.  The Office of Indian Services states that the Tribal Relations staff within the office's Division of Tribal Government Services assists tribes with the development and approval of tribal constitutions and articles of incorporation.  The BIA website explains that:

> *The functions of Tribal Relations include the review and approval of tribal organic documents as required by Federal (25 U.S.C. 476) or Tribal law.*  The organic documents may include new constitutions primarily for the newly recognized tribes, amendments to existing constitutions or total revisions of existing constitutions.  Tribal Relations staff provides technical assistance to tribes with the initial drafting of a new constitution, an amendment or revision.

Ex. D at 2 (emphasis added).  A true and correct copy of this portion of the BIA website is attached hereto as Exhibit D and is available online at:

http://www.bia.gov/WhoWeAre/BIA/OIS/TribalGovernmentServices/index.htm.

29.    If the BIA is providing technical assistance to tribes in drafting new or revised constitutions without the benefit of having any existing or past tribal constitutions on hand, it is utterly failing its trust responsibility to the tribes.  Unless those BIA experts assisting with constitutional drafting are providing uninformed advice, they are relying on previously enacted tribal constitutions and articles of incorporation, and those records are responsive to the Request and must be released.  It strains credulity to assert that the Office of Indian Services, which provides technical assistance, review and approval of proposed tribal constitutions, cannot locate any copies of those constitutions it has reviewed, approved, or assisted tribes in drafting.

30.    The BIA's Division of Tribal Government Services also makes available on its website a document labeled "Sample Constitution," which provides a suggested framework for a three-branch tribal government.  Ex. E.  This document states that the sample constitution's contents "are not provisions required by the BIA," but that "[t]he BIA Agency and Regional

Offices will provide technical assistance to Tribal governments in the development of constitutional provisions." *Id.* at 1.  A true and correct copy of the "Sample Constitution" is attached hereto as Exhibit E and is available online at:

http://www.bia.gov/cs/groups/public/documents/text/idc-001884.pdf.

31.     Although the "Sample Constitution" is not itself a responsive record, its existence on the BIA's website provides further proof that the BIA must have copies of the tribal constitutions on which it is modeled (and those modeled upon it, if any exist).

32.     Interior has not responded to Dr. Kemper's administrative appeal as of the date of filing of this action.  Because more than 20 working days have elapsed since the filing of the administrative appeal, Dr. Kemper is deemed to have exhausted his administrative remedies by operation of law.  5 U.S.C. § 552(a)(6).

## FIRST CAUSE OF ACTION
### (Violation of FOIA for failure to conduct a reasonable search)

33.     Dr. Kemper repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

34.     Interior and BIA are agencies subject to FOIA, 5 U.S.C. § 552(f), and therefore had an obligation to conduct a search reasonably calculated to uncover all records responsive to the Request.

35.     The BIA's limited search of the records of one headquarters office was legally inadequate, and as a result Interior has manifestly failed to satisfy its obligations to diligently search for responsive records under FOIA, 5 U.S.C. § 552(a)(3).

## SECOND CAUSE OF ACTION
(Violation of FOIA for failure to make records available)

36.     Dr. Kemper repeats, realleges, and incorporates the allegations in the foregoing

paragraphs as though fully set forth herein.

37.     Interior and BIA are agencies subject to FOIA, 5 U.S.C. § 552(f), and therefore

must disclose in response to a FOIA request all responsive records in their possession at the time

of the Request that are not specifically exempt from disclosure under FOIA, and must provide a

lawful reason for withholding any records as to which it is claiming an exemption.

38.     Interior's failure timely to disclose the records requested by Dr. Kemper violates

FOIA, 5 U.S.C. § 552(a)(3)(A).

## REQUEST FOR RELIEF

**WHEREFORE**, Dr. Kemper  respectfully requests that this Court:

a.      Expedite consideration of this Complaint pursuant to 28 U.S.C. § 1657;

b.      Declare that the records sought by Dr. Kemper's Request, as more

particularly described above, are public records pursuant to 5 U.S.C.

§ 552, that the BIA and Interior failed to conduct a reasonable and diligent

search for the records as required by 5 U.S.C. § 552(a)(3), and that the

records must be disclosed;

c.      Order Interior to provide those records to Dr. Kemper within 20 business

days of the Court's order;

d.      Award Dr. Kemper the costs of this proceeding, including reasonable

attorneys' fees, as authorized by 5 U.S.C. § 552(a)(4)(E); and

e.      Grant Dr. Kemper such other and further relief as this Court deems just

and proper.

Dated:  May 26, 2015

Respectfully submitted,

LEVINE SULLIVAN KOCH & SCHULZ, LLP

By:      /s/_____
        Matthew E. Kelley (D.C. Bar No. 1018126)
        Chad R. Bowman (D.C. Bar No. 484150)
        1899 L Street, N.W., Suite 200
        Washington, D.C.  20036
        Telephone: (202) 508-1136
        Fax: (202) 861-9888
        mekelley@lskslaw.com
        cbowman@lskslaw.com

*Counsel for Plaintiff Kevin R. Kemper*